**FARMERS EXPORT COMPANY,**
**Plaintiff-Appellee,**
**Cross-Appellant,**

v.

**M/V GEORGIS PROIS, ETC.,**
**Defendant,**

**Marfo Compania S.A., in personam,**
**Defendant-Appellant,**
**Cross-Appellee.**

No. 84–3830.

United States Court of Appeals,
Fifth Circuit.

Sept. 5, 1986.

---

Chaffe, McCall, Phillips, Toler & Sarpy, Harvey G. Gleason, Frank V. LeBlanc, III, New Orleans, La., for defendant-appellant, cross-appellee.

André J. Mouledoux, John F. Young, Jr., New Orleans, La., for plaintiff-appellee, cross-appellant.

Before RANDALL and GARWOOD, Circuit Judges, and SCHWARTZ,* District Judge.

GARWOOD, Circuit Judge:

A shipowner appeals the district court's judgment enforcing the liquidated damages clause of a dock tariff. Appellee, a grain elevator, billed the shipowner at the rate of $5,000 per hour, as provided in the dock tariff, for the twenty-eight-hour period during which the ship remained at berth after being requested to leave. The ship was unable to leave the berth because striking crew members prevented the master from casting off his lines. When the shipowner refused to pay the bill, the grain elevator brought this suit. The district court found that the $5,000 per hour charge was reasonably related to anticipated damages and upheld the validity of the liquidated damages clause; however, the court disallowed damages for the period when inclement weather otherwise would have prevented the loading of the grain. The shipowner appeals the district court's decision, claim-

* District Judge of the Eastern District of Louisi-    ana, sitting by designation.

ing that the $5,000 per hour charge is a penalty rather than a liquidated damages clause and therefore is not enforceable. The grain elevator cross-appeals the disallowance of time for inclement weather, claiming that under the dock tariff once the damages clause becomes effective it remains in effect regardless of intervening circumstances. We find the $5,000 per hour charge in the dock tariff is reasonably related to the forecasted damages and therefore is not a penalty and is enforceable. We also find that under the provisions of the dock tariff once the liquidated damages clause is activated it remains in effect regardless of inclement weather conditions and the elevator is entitled to damages for the entire period that the ship remained at berth after receiving orders to leave. Accordingly, the judgment below is affirmed in part and reversed in part.

### Facts and Proceedings Below

The M/V GEORGIS PROIS, a vessel owned by appellant, cross-appellee Marfo Compania S.A. (Marfo), came to general anchorage at the grain facility of appellee, cross-appellant Farmers Export Company (Farmers), at Ama, Louisiana, to receive a shipment of soybeans. The ship's agent in Louisiana had arranged for berthing privileges prior to the ship's arrival and he had signed a berthing application which included specific damage provisions for failure to leave the berth when requested to do so. Before the ship was allowed to berth, the captain was required to sign certain papers which included the provisions regarding failure to vacate the berth. The ship arrived at 05:00 hours on June 27, 1983, and the elevator began loading grain at 08:40 hours. Loading was stopped due to inclement weather at 11:20 hours.[1]

During the time of inclement weather, misfortune befell the GEORGIS PROIS. The crew of the GEORGIS PROIS included able-bodied seamen, who were represented by a union known as P.E.N.E.N., and engineers, who were represented by a union known as P.E.M.E.M. Both of these unions had instructed their members to engage in a forty-eight-hour strike while their ship was in port. At approximately 16:00 hours on June 27, eleven crew members of the GEORGIS PROIS announced that they were going on strike, leaving twenty-one crew members willing to work. Around 17:00 hours, the personnel at the Farmers grain elevator asked the ship to open her hatches so that the grain could be inspected and loading resumed. The ship's master was unable to open the hatches, however, because striking crew members had cut off the power to the hatches and prevented the nonstriking crew members from turning on the power. The ship's master informed Farmers of his plight. Later that evening, Farmers personnel informed the ship that it would have to leave berth because the striking crew members made it impossible to load the grain. The shipowner ordered tugs in an attempt to move the GEORGIS PROIS as a dead ship. However, the striking crew members threatened to injure any crew member who tried to cast off the ship's lines, thereby preventing her from being moved.

The following morning, Farmers contacted its attorney and suit was brought to remove the striking crew members. At approximately 17:00 hours on June 28, agents of the United States Immigration and Naturalization Service and a United States Marshal boarded the M/V GEORGIS PROIS to remove the striking crew members. Loading of the grain was able to recommence several hours later in the evening of June 28 and was completed in the morning of June 29. The striking crew members had prevented the loading of the grain for approximately twenty-eight hours.

After the grain was loaded, the GEORGIS PROIS departed the berth and continued on her way. Farmers sent an invoice to Marfo, as owner of the GEORGIS PROIS, for $140,000, which reflected the

---

1. Due to USDA regulations, grain cannot be loaded during heavy rain periods as the grain can become damp and spoil in transit.

ship's twenty-eight-hour delay at $5,000 per hour. When Marfo did not pay the invoice, Farmers filed suit *in rem* in the United States District Court for the Eastern District of Louisiana, seeking to recover attorneys' fees and damages in the amount of $5,000 per hour. The GEORGIS PROIS was seized by the United States Marshal; the arrest was vacated and the vessel was subsequently released upon the posting of a release bond. Marfo filed an answer denying all the allegations. Farmers amended its original complaint to add a claim against Marfo *in personam.* In a bench trial, the district court upheld the $5,000 per hour charge, found that the vessel had been delayed twenty-eight hours, and that during this time inclement weather would otherwise have prevented loading for eleven and a half hours. The court disallowed a damage claim for the eleven and a half hours during which rain otherwise would have prevented loading and awarded damages totaling $82,500. Marfo appeals the awarding of damages at the rate of $5,000 per hour, claiming that such charge is a penalty and not a liquidated damage. Farmers appeals the exclusion of damages for the time during which inclement weather would have prevented loading.

### Discussion

The first question is whether the liquidated damages provision in the dock tariff is truly liquidated damages, or whether it is a penalty. Article Six of the dock tariff provides:

> "Farmers Export Company reserves the right to order any vessel from the berth at the sole discretion of Farmers Export Company. Should the vessel fail to vacate the berth when so ordered, a dockage charge of $5,000.00 per hour for each hour, or fraction thereof, that the vessel remains in berth shall be assessed against the vessel and/or its owners and agents."

Whether the liquidated damages provision is a penalty is a question of law for the court. *Board of Trustees v. Wood,* 779 F.2d 1106, 1107 (5th Cir.1986); *Ruckel-*

*shaus v. Broward County School Board,* 494 F.2d 1164, 1165 (5th Cir.1974). The *Restatement (Second) of Contracts* § 356 comment b (1979), provides a two-part test to determine if stipulated damages are a penalty. The first factor is the anticipated or actual loss caused by the breach. The amount fixed is reasonable if it approximates the actual loss that has resulted from a particular breach, even though it may not approximate the loss that might have been anticipated under other possible situations, *or* if the breach approximates the loss anticipated at the time of making the contract, even though it does not approximate the actual loss. *Id.* The second factor is the difficulty of proof of loss. The greater the difficulty of proof of loss, the more flexibility is allowed in approximating the anticipated or actual harm. *Id.*

We will examine the second factor first, because the more difficult it is to prove damages, the more leeway the court allows in determining whether the liquidated damages are reasonably related to anticipated damages. It appears it would be relatively difficult to prove the damages resulting from failure to leave the berth. Damages would depend on the capacity of the specific ships awaiting berth, weather conditions which might otherwise affect loading, and whether or not the elevator was full at the time the damages occurred. In addition, the frequency with which grain elevators in the area have such stipulated damages is some indication that the damages are difficult to prove. *Cf. Hellenic Lines, Ltd. v. Embassy of Pakistan,* 467 F.2d 1150, 1157 (2d Cir.1972).

Since the damages are difficult to prove, a court will be more lenient in determining whether the amount was a reasonable approximation of the anticipated loss at the time the contract was signed. This Court has held that the weight of authority places the burden of proving that a contract provision is a penalty rather than a liquidated damages clause on the party urging the penalty construction. *Shel-Al Corp. v. American National Insurance Co.,* 492 F.2d 87, 93 (5th Cir.1974). *See*

also *Jennie-O Foods, Inc. v. United States,* 580 F.2d 400, 217 Ct.Cl. 314 (1978) (contractor has burden of showing that liquidated damages provision in government contract bore no reasonable relation to loss the government suffered). *Contra, Precon, Inc. v. JRS Realty Trust,* 47 B.R. 432 (D.C.Me.1985) (party seeking award of liquidated damages has burden of proving reasonable relationship between forecasted and actual damages).

■ In an attempt to prove the reasonableness of the $5,000 charge, Farmers' executive vice president, Stephen Lyle, testified that the tariff had a two-fold purpose: (1) to help regulate the activities of the elevator; and (2) to serve as an estimate of the average cost the elevator would incur if vessel loading was interrupted for any reason. Lyle further testified that in determining such average damages, he would look at the average demurrage and dispatch rates that are in effect on the vessels that are loaded at the facility, the average size of the vessels, the demurrage on barge and rail cars, the interest on the grain that the elevator finances, interest on the facility, and debt on the grain elevator facility. His testimony as to these factors tends to support the $5,000 figure.

There are two problems, however, with Lyle's testimony. One is that he could not state that the factors he listed actually were considered in establishing the $5,000 per hour charge. While actual consideration of these factors would indicate that the charge was an estimate of anticipated damages, the mere fact that Farmers was aware of these factors does not indicate the charge was reasonable if Farmers had not in fact considered them in establishing the $5,000 per hour figure.

The second problem is that Lyle indicated that one purpose of the provision was to encourage ships to vacate the berth when ordered to do so. This is not a proper purpose for liquidated damages. In contracts cases, the goal of the law is to place the nonbreaching party in the same position in which it would have been without the breach, not to inflict a penalty for nonperformance. *International Brotherhood of Electrical Workers v. A–1 Electric Service, Inc.,* 535 F.2d 1, 3 (10th Cir.), *cert. denied,* 429 U.S. 832, 97 S.Ct. 94, 50 L.Ed.2d 96 (1976); *Restatement, supra,* at § 356 comment a. Various courts have held that whether the parties intended to provide for a penalty or to estimate the damages which would be sustained in the event of a breach is a controlling factor. *Cegers v. United States,* 7 Cl.Ct. 615 (1985); *S.O.G. v. Travelers Indemnity Co.,* 658 F.2d 562, 570 (8th Cir.1981) (applying Arkansas law); *Shel-Al, supra* at 93–94 (applying Alabama law); *Massman Construction Co. v. City Council,* 147 F.2d 925, 927 (5th Cir.1945) (applying Mississippi law). The *Restatement, supra* at § 356 comment c, on the other hand, states that the intention of the parties is not significant. This seeming inconsistency is reconciled in 5 *Williston on Contracts* § 778 (3d ed. 1961), on the theory that the only information before the court on whether the parties in good faith attempted to create a penalty is the statement of the parties, to which the court should pay little attention, and whether the sum named is reasonable. Under this theory, the question of the intent of the parties collapses into the question of the reasonableness of the stipulated damages. If the amount stipulated is reasonable, the parties intended liquidated damages. In *Cegers, supra* at 619, the court stated that since the contract called for the retention of the earnest money and both parties signed the contract, the parties clearly intended to provide for liquidated damages and the question for the court was the reasonableness of the damages. In *Shel-Al, supra* at 94, this Court stated that if a court finds that damages were uncertain at the time the contract was formed and the amount stipulated was not out of proportion to probable damages, the court may conclude that the parties stipulated damages because of these two factors. Under this rationale, the fact that the dock tariff clearly called for stipulated damages if the ship failed to leave the berth indicated the parties intended to pro-

vide for liquidated damages.[2] Although Farmers' witness testified that a purpose of the provision was to encourage ships to leave the berth when requested to do so, under the rationale discussed above whether the stipulated amount was reasonable should be a stronger indication of whether the damages are a penalty than Lyle's statement.

In a further attempt to prove the reasonableness of the stipulated amount, various tariffs of other grain elevators in the vicinity were submitted into evidence, all of which had a charge of $5,000 per hour. In rebuttal, Marfo presented evidence of other grain elevators which had charges of approximately $2,000 per hour. Farmers countered this evidence with the testimony of its expert witness, Bernard J. O'Dowd, who testified that the difference between the stipulated damages in the dock tariffs of Farmers and other elevators that charged $5,000, and those charging less, was due to the differences in the type of facilities, such as the size of the grain elevator, the ability to load and unload during high water, whether or not the elevator owned the dock, and the debt the facility would be retiring. Taken as a whole, this evidence indicates that the $5,000 per hour charge was a reasonable forecast of the anticipated damages to the grain elevator when a ship failed to leave berth when ordered to do so.

Farmers also tried to prove the reasonableness of the $5,000 per hour charge by showing the actual damages incurred. Actual damages can be an indication that the stipulated damages were reasonable. *Cegers, supra* at 620. Richard Speidel, Farmers' manager of export documentation and logistics, testified that Farmers incurred actual damages of $155,256, or $5,184 per hour. Speidel determined that the delay set off a chain reaction that affected opera-

tions at the elevator for five weeks. Marfo challenged these results, claiming that the failure of the GEORGIS PROIS to leave berth did not set off a chain reaction, but that the elevator caught up by working forty-eight hours on the weekend following the incident. To support this claim, Marfo presented its own expert witness, Raymond J. Jeandron, certified public accountant. Jeandron testified that he had reviewed the documents prepared by Speidel and that while they purported to show the damages caused by demurrage owed and dispatch lost, in reality the total amount lost was $6,882. The district court discredited that portion of Jeandron's testimony because, according to the court, Jeandron testified outside his expertise. The court stated that while Jeandron was qualified as an accounting expert, he had tried to testify about the operation of a grain elevator although he never had been associated with a grain elevator or the loading of ships. The record indicates that Jeandron had little or no experience in the operation of grain elevators, with the result that his testimony on the ability of the elevator to make up any delay time over the weekend is questionable.

While this Court must determine the reasonableness of the damages as a question of law, in making that determination we rely on the findings of fact of the district court. The district court's findings regarding the credibility of a witness are due special deference. Fed.R.Civ.P. 52; *Anderson v. City of Bessemer,* 470 U.S. 564, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985). The expertise of a witness is likewise a matter for the district court to determine, subject to review only for abuse of discretion. *Bauman v. Centex Corp.,* 611 F.2d 1115, 1120 (5th Cir.1980). Likewise, the weight to be given a particular expert's testimony is generally a matter for the

---

**2.** Marfo places some emphasis in its brief on the fact that the captain of the GEORGIS PROIS could not read English and signed the provisions only because he believed he had to in order to be allowed to berth. The contract was not formed, however, when the captain signed the document. Marfo had already agreed to

abide by those terms when its shipping agent, who was fluent in English, agreed to the tariff in its entirety. The signing of the excerpts before the ship was allowed to berth was merely to make sure that the captain was aware of the terms of the tariff.

trier of fact. *Pittman v. Gilmore,* 556 F.2d 1259 (5th Cir.1977). Accordingly, we do not consider Jeandron's testimony regarding the erroneous nature of Speidel's damage calculations as being decisive. The evidence viewed in its entirety indicates that the liquidated damages were reasonable in light of the actual damages.

The district court found the $5,000 to be a reasonable forecast and not a penalty, and, while we are not bound by its decision on questions of law, its evaluation of the credibility and expertise of witnesses is at the least persuasive. We hold that the $5,000 an hour charge was reasonable and not a penalty in light of the relationship of the charges to estimated and actual damages. Therefore the charge is enforceable under general maritime law.[3]

■ On cross-appeal, Farmers challenges the district court's decision to disallow the liquidated damages for the time during which inclement weather otherwise would have prevented loading of the grain. Article Six, quoted earlier in this opinion, provides for the imposition of the $5,000 per hour dockage charge. Article Seven of the tariff states in pertinent part: "At any time that a $5,000.00 per hour dockage charge is assessed for the reasons mentioned in this tariff, that charge shall be assessed continuously until the vessel vacates the berth, regardless of intervening circumstances." Farmers contends that under this clause once a damage provision goes into effect the $5,000 charge applies

regardless of intervening circumstances that otherwise would prevent loading. Marfo relies upon Article Eight,[4] which states that the ship is liable for operations that stop loading except for cases caused by the elevator's inability to load. Marfo reasons that bad weather is equivalent to an inability to load on the part of the elevator and that therefore the provision should apply to disallow damages for the time during which inclement weather would have prevented loading.

■ The interpretation of contracts is a question of law fully reviewable on appeal. *Houston Greater Insurance Co. v. Realex Group, N.V.,* 776 F.2d 514, 515 (5th Cir. 1985); *Strachan Shipping Co. v. Dresser Industries, Inc.,* 701 F.2d 483, 486 (5th Cir.1983). A reading of all three provisions, Articles Six, Seven, and Eight, clearly shows that the Article Seven statement that the $5,000 charge continues regardless of intervening circumstances applies to the charge provided for in Article Six of the tariff, such that once the $5,000 damages clause becomes effective it is effective for the entire length of time the ship is unable to leave the berth regardless of any intervening circumstances, such as inclement weather, which would otherwise prevent the grain elevator from loading. Article Eight of the tariff applies independently of Articles Six and Seven to those times when weather or other activities cause the elevator to be inoperable. Article Six, however, is limited to situations where "the Vessel

3. Farmers originally argued that Louisiana law might apply to the determination of liquidated damages, but later dropped this contention at oral argument. Under Louisiana law, if the parties agree to the damages, the court does not have to decide whether they are a reasonable forecast of anticipated damages. *Pembroke v. Gulf Oil Corp.,* 454 F.2d 606 (5th Cir.1971). The present case, however, involves a maritime contract between a United States company and a foreign flagship. In such a case, the federal interest in protecting maritime commerce is often best served by establishing uniform rules of conduct. *See Louisiana ex rel Guste v. M/V TESTBANK,* 752 F.2d 1019 (5th Cir.1985) (en banc), *cert. denied,* ⸺ U.S. ⸺, 106 S.Ct. 3271, 91 L.Ed.2d 562 (1986). If federal law applies, then there is a basis for requiring that stipulated damages be a reasonable anticipation of expect-

ed losses. *Hellenic Lines, Ltd. v. Embassy of Pakistan,* 467 F.2d 1150 (2d Cir.1972). We do not have to reach that question in this case, however, since even under the reasonable anticipation of expected losses standard the test for liquidated damges is met here.

4. Article Eight of the tariff states:

"If at any time a ship stops or delays the elevator vessel loading operations for any reason, whether caused by the ship or otherwise except for cases caused by the elevator's inability to load, a dockage charge of $5,000.00 per hour, or fraction thereof, shall be assessed against the Vessel and/or its Owners and Agents in addition to any other charges contained within this tariff."

fail[s] to vacate the berth when so ordered." The position of the Articles in the document also shows that Article Eight is independent of Articles Six and Seven, as it is more likely that the parties intended for Article Six to be governed by the intervening circumstances clause of Article Seven, which immediately follows it, rather than by the provisions in the once removed Article Eight. Moreover, Article Seven states that the charge continues "until the vessel vacates the berth," thus necessarily referring to the only situation dealt with in Article Six, namely, where a ship refuses to leave the dock when requested to do so. Article Eight, however, applies to situations where a "ship stops or delays the elevator vessel loading," and does not deal with the situation where a ship does not honor a request to leave the dock. In the case at bar, the ship refused to leave when requested to do so and the situation is governed by Articles Six and Seven, not Eight. The tariff clearly shows that once the Article Six liquidated damages provision becomes effective it continues by virtue of Article Seven for the length of time the ship is at berth without permission, even though intervening circumstances occur. Therefore, Marfo is not entitled to a disallowance for those times during which inclement weather would have prevented loading.

### Conclusion

The $5,000 per hour charge is not a penalty, but is liquidated damages because it is reasonably related to both the anticipated damages at the time the dock tariff was signed and the actual damages. Marfo is not entitled to a disallowance for the eleven and a half hour period of rain because Article Seven of the dock tariff clearly provides that once the $5,000 per hour Article Six charge goes into operation it continues regardless of intervening circumstances that otherwise would have prevented loading. We affirm the district court's decision that the $5,000 per hour charge is a liquidated damage and not a penalty and reverse the district court's decision regarding disallowance for inclement weather,

and allow recovery for those hours which the district court disallowed on that basis. We remand for entry of judgment in conformity herewith.

The judgment is AFFIRMED in part and REVERSED in part, and the cause is REMANDED.