# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
January 8, 2013

Lyle W. Cayce
Clerk

No. 12-30280

INTERNATIONAL MARINE, L.L.C.; INTERNATIONAL OFFSHORE
SERVICES, L.L.C.,

Plaintiffs - Appellants,

v.

DELTA TOWING, L.L.C.,

Defendant - Appellee.

Appeals from the United States District Court
for the Eastern District of Louisiana

Before STEWART, Chief Judge, and KING and OWEN, Circuit Judges.

CARL E. STEWART, Chief Judge:

The district court entered an order declaring enforceable under general maritime law a liquidated damages provision in a contract between Defendant-Appellee Delta Towing, L.L.C. and Plaintiffs-Appellants International Marine, L.L.C. and International Offshore Services, L.L.C.  Upon Plaintiffs' motion, the district court certified the order as a final judgment pursuant to Federal Rule of Civil Procedure 54(b), and Plaintiffs now appeals.  We AFFIRM.

No. 12-30280

# I. BACKGROUND

## A.    Negotiations Lead to Vessel Sales Agreement

On September 8, 2006, International Marine, L.L.C.[1] entered into a Vessel Sales Agreement ("VSA") with Delta Towing, L.L.C. ("Delta") wherein International purchased two tugboats from Delta for $4 million. The companies' agreement was preceded by several months of negotiations between International's president, Stephen Williams, and counsel, Peter Rouse, and the treasurer of Delta's parent company, Darren Vorst. Throughout the negotiations, Williams was clear that the vessels were for "in house" use and would not be used to compete with Delta. Delta initially declined to sell the vessels because it intended to use them to grow its business, but ultimately agreed to sell them subject to its standard non-compete language.

The signed VSA includes a liquidated damages provision ("LD Provision") that, *inter alia*, provided for a $250,000 payment for, *inter alia*, each violation of the non-competition clause. This figure had been the subject of significant negotiations between Rouse and Delta, and its magnitude had dropped significantly over several rounds of negotiations, from a starting figure of $4 million per violation.

## B.    Liquidated Damages and Related Provisions

The VSA contains two relevant contract provisions. The first, Paragraph 11F, is a non-competition clause between International (Buyer) and Delta (Seller), which reads as follows:

> F. <u>Covenant Regarding Name/Use of Vessels/Hiring of Crews</u>. . . . Buyer represents that it is purchasing the Vessels for use with Buyer's owned or chartered equipment in support of Buyer's internal operations.

---

[1] International Offshore Services, L.L.C. served as International Marine, L.L.C.'s guarantor in the subsequently signed Vessel Sales Agreement. Collectively, we refer to both companies as "International."

No. 12-30280

> Inasmuch, Buyer covenants and agrees that **neither it nor any of its affiliated companies will charter out or enter into towing contracts or otherwise utilize or permit anyone else to utilize the Vessels for hire** (collectively "Charters Out") in the inland or offshore waters of the U.S. Gulf of Mexico . . . (the "Covered Trade") for a period of five (5) years from the date of this Agreement (the "Covered Term"). . . . Notwithstanding the foregoing, **in the event Buyer or its affiliated companies wish to Charter Out either or both of the Vessels in the Covered Trade during all or part of the Covered Term, Buyer shall be obligated to time charter the applicable Vessels to Seller for Seller to enter into Charters Out** with customers acceptable to Seller . . . .

VSA ¶ 11F (emphasis added). Thus, in the event International decided to compete with Delta for third-party charters, it was first obligated to notify Delta and give it the option of operating charters itself. If Delta chose to operate the charter, it would remit ninety percent of the gross charter fee to International. If Delta was unable to secure charter customers for the vessels within a reasonable period of time, International was permitted to operate its own charters and would remit ten percent of the charter fee to Delta. Additionally, the charter hire rate charged to customers had to be reasonably agreeable to both Delta and International.

The VSA's LD Provision, Paragraph 11G, reads as follows:

> G. <u>Liquidated Damages</u>. The consideration for the provisions in paragraph 11F and this paragraph 11G is that the above Purchase Price is below the fair market price of the Vessels at the time of sale and other good and valuable consideration the receipt and sufficiency of which is hereby acknowledged and confessed. **In the event Buyer or its affiliated companies or other subsequent owner, manager, or charter of the Vessels violates any of the covenants and agreements in paragraph 11F, Buyer shall pay to**

3

No. 12-30280

> **Seller as liquidated damages, and not as a penalty, the greater of (i) the sum of Two Hundred Fifty Thousand and no/100 Dollars ($250,000.00) per incident or occurrence or (ii) if applicable the gross amount of revenue earned in violation of such covenant and agreement with respect of the incident or occurrence in question** . . . . All liquidated damages shall be payable within 30 days of notice of the violation.  It is understood that the **resultant damages of any such breach of the covenants and agreements contained in paragraph 11F would be difficult to ascertain with certainty but that the amount stipulated herein is a good faith reasonable estimate of the damages Seller would suffer**. . . . In no event shall any party or the affiliated companies thereof or the respective shareholders, officers, directors, employees, agents, or representatives thereof circumvent or attempt to circumvent the provisions of paragraph 11F or this paragraph 11G by any means, direct or indirect.

VSA ¶ 11G (emphasis added).

## C.    Delta Discovers Breach of VSA ¶ 11F

In July 2008, Delta notified International that it had become aware that the vessels had been chartered without Delta's knowledge in violation of the VSA.  International responded in late November 2008 by remitting a check for $53,293.33, which it claimed was the extent of the "owed commissions."  Delta refused to accept the check as the full amount owed and requested material backing up International's figure.  In early 2009, while conducting an audit with one of Delta's employees, International discovered that it owed Delta an additional $37,657, which it remitted in another check.  Delta refused to negotiate this check as well, and later sent a demand letter for the liquidated damages amount multiplied by the alleged thirty-six charters that breached the

4

No. 12-30280

VSA, which totaled $9 million. International has conceded it breached the contract by operating twenty-seven charters.

## D.    International Seeks Declaratory Judgment

In December 2009, Delta sued International in Texas state court for breaching the VSA, including for failing to timely remit multiple charter payments. The VSA's forum selection clause mandates the parties resolve their dispute in the United States District Court for the Eastern District of Louisiana. Therefore, International filed the instant suit, seeking a declaratory judgment that it had not breached the VSA and that the LD Provision was an unenforceable penalty as a matter of law. Delta counterclaimed for breach of contract, seeking enforcement of the LD Provision. Judge McNamara was assigned to the case. The parties engaged in discovery, including conducting depositions.

On March 11, 2011, in a detailed and well-reasoned Order and Reasons,[2] Judge McNamara granted Delta's motion for summary judgment in part and denied International's motion, finding the LD Provision was enforceable. The McNamara Order declined to resolve the issue of damages. Subsequently, Judge McNamara retired, and the case was reassigned to Judge Fallon. International then filed a Motion to Vacate pursuant to Federal Rule of Civil Procedure 60(b) and a Motion to Reconsider based on additional testimony obtained from Delta's former damages expert and Chief Operating Officer, Barry Matherne, who had left Delta since his previous deposition. On February 13, 2012, the district court denied International's motion in its entirety and reaffirmed that the LD Provision was enforceable.[3] The Fallon Order specifically declined to revisit the merits of the McNamara Order, and instead focused on whether the new

---

[2] Hereinafter, we will refer to this order as the "McNamara Order."

[3] Hereinafter, we will refer to this order as the "Fallon Order."

No. 12-30280

Matherne deposition changed the analysis as to whether the LD Provision was enforceable. The Fallon Order concluded that it did not.

International then moved for Judge Fallon to certify the judgment as final or for interlocutory appeal. On March 16, 2012, Judge Fallon certified the Fallon Order as a final judgment pursuant to Federal Rule of Civil Procedure 54(b). International timely appealed.[3]

## II. DISCUSSION

At its core, International's argument is that both the McNamara and Fallon Orders erred when they held the LD Provision was enforceable. International raises several specific points of error in the Orders, including improper consideration of the parties' negotiating capacities and the application of an improper standard of review.

We review a grant of summary judgment de novo, applying the same standard as the district court. *QT Trading, L.P. v. M/V Saga Morus*, 641 F.3d 105, 108 (5th Cir. 2011) (citation omitted). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that an actual controversy exists." *QT Trading*, 641 F.3d at 108 (citation and internal quotation marks omitted). We review the district court's judgment, and our analysis need not be based solely on the district court's stated reasons. *See Cambridge Integrated*

---

[3] Delta briefly asserts that International has not properly appealed the McNamara and Fallon Orders. Although Delta does not press this argument, we are "obligated to examine the basis for our jurisdiction, *sua sponte*, if necessary." *In re Cortez*, 457 F.3d 448, 453 (5th Cir. 2006) (citation and internal quotation marks omitted). We have determined that we have jurisdiction over this appeal.

Additionally, the VSA states that it is governed according to general maritime law and Louisiana law, if applicable. Judge McNamara determined the LD Provision was subject to general maritime law, a determination the parties have not appealed.

*Servs. Grp., Inc. v. Concentra Integrated Servs., Inc.*, 697 F.3d 248, 253 (5th Cir. 2012) (citation and internal quotation marks omitted) ("We are not limited to the district court's reasons for its grant of summary judgment and may affirm the district court's summary judgment on any ground raised below and supported by the record.").

The interpretation of maritime contract terms is a matter of law we review de novo. *One Beacon Ins. Co. v. Crowley Marine Servs., Inc.*, 648 F.3d 258, 262 (5th Cir. 2011). When interpreting maritime contracts, federal admiralty law rather than state law applies. *See Har-Win, Inc. v. Consol. Grain & Barge Co.*, 794 F.2d 985, 987 (5th Cir. 1986) (collecting citations). Whether a liquidated damages clause is a penalty is a question of law. *Louis Dreyfus Corp. v. 27,946 Long Tons of Corn*, 830 F.2d 1321, 1331 (5th Cir. 1987) (citation omitted). The burden of proving that a liquidated damages clause is a penalty is on the party urging for it to be viewed as a penalty. *Farmers Exp. Co. v. M/V Georgis Prois*, 799 F.2d 159, 162 (5th Cir. 1986) (citation omitted).

## A.    Applicable Law

In interpreting liquidated damages clauses in maritime contracts, we apply the *Restatement (Second) of Contracts* Section 356 comment b (the "Restatement") to determine whether such a clause is "so unreasonably large as to be a penalty." We have explained the comment's two-part test as follows:

> The first factor is the anticipated or actual loss caused by the breach. The amount fixed is reasonable if it approximates the actual loss that has resulted from a particular breach, even though it may not approximate the loss that might have been anticipated under other possible situations, *or* if the breach approximates the loss anticipated at the time of making the contract, even though it does not approximate the actual loss. The second factor is the difficulty of proof of loss. The greater the difficulty of proof of loss, the more flexibility

> is allowed in approximating the anticipated or actual harm.

*Farmers Exp.*, 799 F.2d at 162 (citations omitted).

Our circuit precedent in the context of maritime liquidated damages is limited to two cases: *Farmers Export*, 799 F.2d 159, and *Louis Dreyfus*, 830 F.2d 1321. Both concern liquidated damages that attached when a vessel overstayed its timeslot at a berth. In *Farmers Export*, we upheld a $5,000 per hour liquidated damages charge as reasonable and not a penalty. 799 F.2d at 165. In reaching this conclusion, we noted that while "the reasonableness of the damages [is] a question of law, in making that determination we rely on the findings of fact of the district court." *Id.* at 164. We therefore viewed as persuasive the district court's factual findings that $5,000 was a reasonable forecast of the grain facility owner's damages. *Id.* at 165. To reach that conclusion, the district court considered expert testimony about actual damage estimates and the charges levied by other grain elevators. *Id.* at 164.

In *Louis Dreyfus*, we refused to enforce a liquidated damages clause that assessed a $30,000 per day liquidated damages charge to a ship that failed to vacate its loading berth. 830 F.3d at 1332. We stated that the "district court was entitled to find" that the charge, which was based on a "reasonable pre-estimate of" the damages that would accrue in a full calendar day, "is excessive when the vessel occupies the berth for a much shorter time." *Id.*

**B.     Analysis**

Our review of the record shows that Delta's concerns about competition—and International's assurances that it would not compete with Delta—were critical in the negotiations that led to the sale of the vessels, and they underpin the LD Provision. This conclusion anchors our analysis of the Restatement's factors.

Pursuant to our precedent, we first examine the second Restatement factor "because the more difficult it is to prove damages, the more leeway the court allows in determining whether the liquidated damages are reasonably related to anticipated damages." *Farmers Exp.*, 799 F.2d at 162. Contrary to International's assertions, the damage that would accrue from International's breach of VSA Paragraph 11F was not just the ten-percent fee International owed when it chartered out the vessels. Instead, and more importantly, it was also Delta's inability to prevent competition, leading to the potential loss of customers, business opportunities and market share due to International's failure to notify Delta of its intent to compete.

International does not dispute the difficulty in estimating damages before a non-competition clause is breached. We have previously recognized that it is difficult to calculate the damage that results when a covenant not to compete is breached. *See Blase Indus. Corp. v. Anorad Corp.*, 442 F.3d 235, 238 (5th Cir. 2006) ("[C]ovenants not to compete often include a liquidated damages provision to avoid the difficulty of calculating damages."). The McNamara Order considered testimony about the difficulty of estimating damages *ex ante*, and we agree with its conclusion that these damages are difficult to prove. Therefore, we have—and the district courts properly had—"more leeway" in determining whether the LD Provision is reasonably related to anticipated damages. *Farmers Exp.*, 799 F.2d at 162.

In reaching its decision as to the first Restatement factor, which assesses the reasonableness of the LD Provision, the McNamara Order assessed the expert testimony as to potential charter contracts that Delta could have obtained and the typical charter fee at which the vessels had been hired out before they were sold. The testimony showed that there was variability in the length of charter contracts, but that a single contract could last for as long as several years. The testimony also showed that day rates for charters in late 2006 and

No. 12-30280

2007 could range up to several thousand dollars. Thus, a single charter contract could reasonably generate substantial revenue equal to or in excess of the LD Provision. Moreover, as the McNamara Order noted, "International Marine has presented no evidence suggesting that [Delta's] concerns regarding loss of market share, future customers or future business were unreasonable or unrelated to [Delta's] anticipated loss." R. at 3742. We follow *Farmers Export* in finding persuasive the district court's careful factual findings as to whether the LD Provision was a reasonable forecast of damages. Adopting the language of the McNamara Order, we hold that "[l]ooking at the contract at the time it was made, *ex ante* breach, this court cannot bicker with the $250,000 per occurrence forecast."[4] R. at 3746. International has not met its burden to prove that the LD Provision was a penalty. We thus hold that the district court properly held the LD Provision enforceable.[5]

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment.

---

[4] International places considerable emphasis on the total amount of liquidated damages Delta has claimed. Notwithstanding the Fallon Order's express reservation of the damages issue for trial, we note that the total damages claimed are so large because International breached the non-competition provision at least twenty-seven times. We are loath to find the LD Provision unenforceable merely because International adopted a pattern of disregarding its contractual obligations.

[5] Because we have determined the district courts' judgment was correct, we need not reach International's arguments related to the district courts' allegedly improper reasoning and standard of review. We also decline to decide whether the Restatement's "extreme case" language applies to this situation. *See* Restatement (Second) of Contracts § 356 comment b ("If, to take an extreme case, it is clear that no loss at all has occurred, a provision fixing a substantial sum as damages is unenforceable."). Matherne's testimony that he was unaware of any damage to Delta's competitive position as a result of International's breaches is more probative of the difficulty of proving such damages than of whether damage actually occurred.

10