# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-30788
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

May 29, 2014

Lyle W. Cayce
Clerk

CASHMAN EQUIPMENT CORPORATION,

Plaintiff - Appellant

v.

ROZEL OPERATING COMPANY,

Defendant - Appellee

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:08-CV-363

Before JOLLY, SMITH, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

## I.

Cashman Equipment Corp. ("Cashman") appeals various decisions by the district court in its action against Rozel Operating Co. ("Rozel") arising out of a contract for Rozel to hire one of Cashman's barges. For the following reasons, we affirm the district court's rulings.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-30788

Rozel operates a natural gas platform in the Gulf of Mexico. In June 2007, Rozel contracted with Cashman to charter two barges, JMC 107 and JMC 109, for use as "breaker barges" near the platform. The two barges were intended to be partially submerged in order to shield the platform from waves. JMC 107 and JMC 109 were converted wingwall sections of a World War II Navy drydock. Cashman represented to Rozel and Stokes & Spiehler Offshore, Inc., ("Stokes") (Rozel's engineering and consulting company) that the two barges would be suitable for use as breaker barges.

On August 15, 2007, Rozel attempted to deballast the two barges to return them to Cashman. Rozel raised JMC 107 on August 30, and returned it to Cashman on September 13, 2007. But Rozel could not deballast JMC 109, and to date has not returned the barge. Rozel stopped paying charter hire for JMC 109 on August 30, 2007.

Cashman filed suit against Rozel on June 18, 2008, alleging that Rozel breached the charter parties. It sought to recover the $2,000,000 stipulated value included in the charter. Cashman later amended its complaint to add Stokes as a defendant, alleging that Rozel negligently entrusted the barges to Stokes, and that Stokes was negligent in the barges' ballasting and deballasting. Rozel filed a counter-claim against Cashman for fraud and for fraudulently inducing it into chartering JMC 109.

The parties tried the case before a jury from December 3, 2012 to December 10, 2012. The jury returned a verdict substantially in Cashman's favor, finding that Cashman did not commit fraud or fraudulently induce Rozel into entering the charter party for JMC 109. It further found that Rozel breached the charter party by failing to return JMC 109 to Cashman. Finally, the jury found that Stokes was negligent in its handling of JMC 109, causing Cashman damages in the amount of $200,000. Of this amount, the jury found

No. 13-30788

Rozel to be responsible for 40%, and Stokes responsible for 60%. It did not award the full $2,000,000 Cashman sought. The jury also did not award Cashman charter hire for JMC 109 after August 30, 2007, because the barge became a "constructive total loss" on that date.

On January 18, 2013, the district court entered a judgment awarding Cashman $200,000 in damages, plus interest, and used the jury's apportionment of fault between Rozel and Stokes. Cashman afterwards filed a motion for a new trial, which the district court denied on July 15, 2013. On July 19, 2013, the district court entered an order awarding Cashman attorney's fees in the amount of $129,669.62, and costs in the amount of $15,471.12. This amount included a 15% reduction of Cashman's total fee amount for failure to exercise billing judgment. Cashman appeals the district court's judgment and denial of his motion for a retrial.

II.

When, as here, a party challenges a judgment consistent with a jury verdict, "the appropriate standard of review to test a jury's factual findings is whether there is 'reasonable evidentiary basis for the jury's verdict.'" *Naquin v. Elevating Boats, L.L.C.*, 744 F.3d 927, 931–32 (5th Cir. 2014) (quoting *Loehr v. Offshore Logistics, Inc.*, 691 F.2d 758, 60 (5th Cir. 1982)). "A trial judge's ruling on a motion for new trial is reviewed for an abuse of discretion." *Bailey v. Daniel*, 967 F.2d 178, 179–80 (5th Cir. 1992). "The denial of a motion for a new trial by the district court 'will be affirmed unless there is a clear showing of an absolute absence of evidence to support the jury's verdict.'" *Miller v. Raytheon Co.*, 716 F.3d 138, 145 (5th Cir. 2013) (quoting *Rivera v. Union Pac. R.R. Co.*, 378 F.3d 502, 506 (5th Cir. 2003)). But "when the district court's ruling is predicated on its view of a question of law, it is subject to *de novo* review." *Munn v. Algee*, 924 F.2d 568, 575 (5th Cir. 1991). The interpretation

3

No. 13-30788

of maritime contract terms and whether a limited damages clause is a penalty are questions of law that we review de novo. *Int'l Marine, L.L.C. v. Delta Towing, L.L.C.*, 704 F.3d 350, 354 (5th Cir. 2013). "We review the district court's award of attorney's fees for abuse of discretion and its factual findings for clear error." *Singer v. City of Waco*, 324 F.3d 813, 829 (5th Cir. 2003).

Cashman raises three issues on appeal. First, it argues that the district court failed to enforce the contractual provisions governing the relationship between Cashman and Rozel. Specifically, the court erred by failing to enforce the contractually agreed value of JMC 109. Cashman also asserts that the court erroneously interpreted the "Total Loss" contract provision so as to deny Cashman charter hire after Rozel "prematurely" abandoned JMC 109. Second, Cashman argues that the district court erred in its decision to hold Rozel 40% and Stokes 60% liable for its damages. Cashman contends that this decision is akin to "allocating tort liability to a defendant who committed no tort and liability for breach of contract to a defendant that had executed no contract." Instead, it argues that the district court should have awarded him $200,000 recovery from each defendant. Finally, Cashman challenges the district court's decision as to the reasonableness of the attorney's fees and costs awarded to him. We address each issue in turn.

Cashman first argues that the district court erred by failing to enforce the charter party's plain language that sets forth the agreed value of JMC 109. It contends that "[t]he District Court improperly discarded the jointly stipulated Agreed Value, affixed its own 'fair and reasonable value' to the JMC 109 over five years after the contract was executed, and then capped Cashman's damages at that arbitrary figure." Once the jury found that the charter party was a valid and enforceable contract, Cashman should have been awarded the full $2,000,000 without any inquiry into the reasonableness of

4

that value.  We hold that the district court did not err by failing to enforce the charter party's plain language because the jury found, and the court agreed, that the agreed value was "so unreasonably large as to be a penalty."  *Int'l Marine*, 704 F.3d at 354.

Whether the agreed value is "so unreasonably large as to be a penalty" is evaluated using a two-part test.

> The amount fixed is reasonable if it approximates the actual loss that has resulted from a particular breach, even though it may not approximate the loss that might have been anticipated under other possible situations, or if the breach approximates the loss anticipated at the time of making the contract, even though it does not approximate the actual loss.  The second factor is the difficulty of proof of loss.  The greater the difficulty of proof of loss, the more flexibility is allowed in approximating the anticipated or actual harm.

*Id.* (quoting *Farmers Exp. Co. v. M/V Georgis Prois*, 799 F.2d 159, 162 (5th Cir. 1986)).  At trial, the jury was given instructions consistent with this test.  The jury instruction provided:

> Stipulated damages are enforced when they are a fair and reasonable attempt to fix just compensation for an anticipated loss caused by a breach of contract.  However, stipulated damages are not enforced when they are not a fair and reasonable attempt to fix just compensation for an anticipated loss caused by a breach of contract, or if the stipulation was procured by fraud.

In its verdict, the jury found that the agreed-upon value was unreasonable and therefore unenforceable, and arrived at $200,000 as a reasonable value for JMC 109.  The district court entered judgment based on this finding, and explained in its July 15, 2013 order that it treated the jury's conclusions on these factual issues "as an advisory verdict."

In its denial of Cashman's motion for a new trial, the district court reviewed the trial evidence that supported its conclusion that "a reasonable value of the JMC 109 was $200,000."  It noted that Cashman paid only $50,000

for the wingwall that it converted into JMC 109, and stated that "[t]here [is] no evidence that the $2,000,000 agreed value of the JMC 109 in the charter party approximated the actual value of the JMC 109."

Having reviewed the record and lower court opinions, we hold that there was sufficient evidence for both the jury and the district court to reach their independent conclusions that $2,000,000 was an unreasonable amount and therefore an unenforceable penalty. Cashman had every opportunity at trial to prove to both the judge and jury that the $2,000,000 dollar amount was a reasonable estimation of its losses. The district court's implementation of the $200,000 figure that the jury found to be reasonable was supported by sufficient evidence, and was not reversible error.

Cashman also argues that the district court erred by cutting off its charter hire payments on August 30, 2007. Cashman states that Rozel was contractually obligated to pay charter hire until (1) Rozel returned JMC 109 to Cashman or (2) JMC was a total loss. It asserts that Stokes was able to raise JMC 109 in August 2007, but instead prematurely abandoned it. Cashman recounts "two separate efforts to raise the barges" that "were en route to success until Stokes prematurely terminated deballasting operations to direct all resources to Rozel's well." Instead of the August 30, 2007 date, Cashman argues that charter hire should have been paid on either February 28 or March 1, 2008, when dive surveys showed that the vessel had deteriorated over the intervening six months. At that time, Cashman was told that it would cost $3,000,000 to retrieve JMC 109. We hold that the district court did not err in holding JMC 109 to be a total loss on August 30, 2007.

"When a vessel is damaged in a collision or other marine casualty, the amount of recovery depends on whether it is deemed a total (or constructive total) loss or whether its partial damage justifies repair." *Gaines Towing and*

*Transp. Inc. v. Atlantia Tanker Corp.*, 191 F.3d 633, 635 (5th Cir. 1999) (per curiam). "A vessel is considered a constructive total loss when the cost of repairs is greater than the fair market value of the vessel immediately before the casualty," *Ryan Walsh Stevedoring Co. v. James Marine Services, Inc.*, 792 F.2d 489, 491 (5th Cir. 1986), and charter hire may not be awarded after a vessel is a constructive total loss, *Gaines*, 191 F.3d at 635.

We hold that sufficient evidence supported the district court's determination that JMC 109 was a constructive total loss as of August 30, 2007. As noted above, the jury and district court weighed competing evidence and concluded that reasonable damages for the loss of JMC 109 was $200,000, not $2,000,000. And Cashman bases his February 28, 2008 date for the end of Rozel's charter hire obligations on an estimated retrieval cost of $3,000,000. As the party seeking relief for breach of a contract, Cashman had the burden of proving that, as of August 30, 2007, Rozel could have raised and returned JMC 109 for a cost less than $200,000. Although Cashman put on evidence that Rozel could have raised the barge before February 2008 but for one reason or another prematurely abandoned those efforts, the jury and judge found that Cashman failed to show that JMC 109 could have been raised for a price cheaper than its actual fair market value. Because sufficient evidence supported these factual findings, we affirm the district court's decision on this issue.

Cashman next argues that the district court erred by allocating 60% of its damages to Stokes and 40% to Rozel. According to Cashman, "[t]he District Court's merging of two separate damage awards had the practical effect of improperly rendering Stokes and Rozel as either solidary obligors or joint tortfeasors." It asserts that, in essence, "Rozel was held liable for a percentage of tort damages it did not cause and Stokes liable for a percentage of

contractual damages when it had no contract." Cashman argues that "the only legally proper designation for these two entities is to classify them as severally liable," which would result in Cashman's being able to recover $200,000 from Stokes and Rozel each, for a total of $400,000. We reject these arguments as meritless and affirm the district court's damages award.

As the district court noted, "[p]roportional damages based on degrees of fault is now the general rule for damages in maritime property damage cases." *Agrico Chem. Co. v. M/V Ben W. Martin*, 664 F.2d 85, 93 (5th Cir. 1981). Cashman cites no authority in support of its assertion that, because Rozel was liable under contract law and Stokes was liable under tort law, the district court's apportionment of damages was error. To the contrary, both this court's prior precedent and Louisiana law suggest the opposite. *See id.* at 94 ("Brent was negligent in loading the cargo. As a stevedore, Brent violated its duty of workmanlike performance."); La. Civ. Code art. 1797 ("An obligation may be solidary though it derives from a different source for each obligor."); La. Civ. Code art. 2323(B) ("The [comparative fault] provisions . . . shall apply to any claim for recovery of damages for injury, death, or loss asserted under any law or legal doctrine or theory of liability, regardless of the basis of liability."). Under Cashman's logic, it is entitled to recover $400,000 for damages that the judge and jury valued at only $200,000. We hold that Cashman's arguments that lead to such a result are meritless.

As its final issue, Cashman challenges the district court's fee award, arguing that it erred in applying a 15% reduction for failure to exercise billing judgment.[1] It also challenges the court's application of a 75% discount for

---

[1] Cashman does not object to the district court's application of a separate discount because "the quantum of attorney's fees is a function of the amount of time expended, supporting a rational argument for reduction of a time-based fee in relation to the degree of success."

costs, arguing that Cashman's costs were not flexible and therefore should not be tied to a "degree of success" analysis. We affirm the district court's award.

"[A] reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983). "[W]e have held that [t]he most critical factor in determining an attorneys' fee award is the degree of success obtained." *Ransom v. M. Patel Enters., Inc.*, 734 F.3d 377, 388 (5th Cir. 2013) (internal quotation marks omitted). Courts also consider whether the party seeking fees exercised billing judgment. "To determine the number of hours reasonably expended on a case, a plaintiff must show that billing judgment was exercised. Billing judgment is usually shown by the attorney writing off unproductive, excessive, or redundant hours." *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 662 (5th Cir. 2002) (internal citation omitted). "The district court may properly reduce or eliminate hours when the supporting documentation is too vague to permit meaningful review." *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 326 (5th Cir. 1995).

The district court reduced Cashman's attorney's fees by 15%, accepting a magistrate judge's report finding that "Cashman has not submitted its original time records" or "produced any evidence of billing judgment." Instead, Cashman submitted bills that included block billing entries. In its objection to the magistrate judge's recommendation, Cashman explained that its original time sheets "simply do not exist" because they were entered into a billing software program and then destroyed. But it averred that "undersigned counsel reviewed a 'Pre-Bill' and deducted all time and cost entries that would have been considered excessive, or duplicative or otherwise should have not been charged to the client." It attached to its objections an affidavit that sought "to establish [that] the requisite billing judgment was exercised."

No. 13-30788

We hold that an attorney's affidavit, without more, is insufficient to demonstrate billing judgment, and affirm the district court's reduction in both fees and costs. There was no abuse of discretion in the district court's decision to reduce Cashman's fees and costs by 75% due to its limited success and inability to state with specificity the hours expended on successful claims.

For the foregoing reasons, we AFFIRM the district court's rulings in all respects.