# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-30038

United States Court of Appeals
Fifth Circuit

**FILED**

April 11, 2016

Lyle W. Cayce
Clerk

CASHMAN EQUIPMENT CORPORATION,

Plaintiff - Appellee Cross-Appellant

v.

BOH BROTHERS CONSTRUCTION COMPANY, L.L.C.,

Defendant - Appellant Cross-Appellee

Appeals from the United States District Court
for the Middle District of Louisiana
USDC No. 3:10-CV-21

Before JONES and SMITH, Circuit Judges, and BOYLE[*], District Judge.

PER CURIAM:[**]

This case involves a maritime contract dispute arising from a crane barge (the "barge") charter agreement between Appellant Cross-Appellee Boh Brothers Construction Company, L.L.C. ("Boh") and Appellee Cross-Appellant Cashman Equipment Corporation ("Cashman"). In the district court, the parties litigated multiple claims and cross-claims for damages and contract breach. After a bench trial, the district court prepared comprehensive findings and conclusions. On appeal, the parties continue to dispute, *inter alia*, whether

---

[*] District Judge of the Northern District of Texas, sitting by designation.

[**] Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

No. 15-30038

an instrument titled the "Equipment Lease Agreement" (the "Equipment Lease") was binding and enforceable, whether Boh owed six months of charter payments after it returned the crane barge to Cashman, whether Boh was entitled to "down time" compensation, and whether the district court properly adjudicated certain charter payment deductions and credits. We substantially agree with many of the court's conclusions, but hold, in particular, that there was no meeting of the minds on the Equipment Lease. Accordingly, we **AFFIRM** in part, and **REVERSE** and **REMAND** in part for further proceedings to assess the impact of this conclusion, reassess interest, and revise a couple individual damages items.

## BACKGROUND

Boh needed to charter a crane barge from Cashman to use on a bridge project in Sanibel Island, Florida. The parties entered into negotiations and signed a bare vessel charter agreement (the "Charter") for use of the barge in 2005. The Charter references an Equipment Lease designed to cover the crane, but the Equipment Lease was separately negotiated by the parties.

In June 2008, Boh docked the barge in Cashman's yard. An Off-Hire Survey (the "Survey"), however, was not conducted until December 2008.[1] In March 2009, Boh received an invoice for monthly charter payments spanning July 2008 to January 2009 and for repairs disclosed by the Survey. Boh refused to pay. Cashman sued to recover the invoice balance. Boh counter-claimed for repair expenses and for "down time"—when Boh's crews were unable to work because the crane needed repair.

After a bench trial, the district court concluded that the Equipment Lease was binding, awarded charter payments and contractual interest to

---

[1] An Off-Hire Survey is an inspection of the vessel to determine its condition before the charter ends.

No. 15-30038

Cashman, awarded some, and disallowed other, charter payment deductions or credits, denied Boh's "down time" claim, and denied Cashman's request for attorneys' fees.  Both parties appeal.

## STANDARD OF REVIEW

The interpretation of maritime contract terms is a matter of law reviewed de novo.  *Int'l Marine, L.L.C. v. Delta Towing, L.L.C.*, 704 F.3d 350, 354 (5th Cir. 2013).  When courts interpret maritime contracts, federal admiralty law applies.  *See Har-Win, Inc. v. Consol. Grain & Barge Co.*, 794 F.2d 985, 987 (5th Cir.1986).  "Factual findings are reviewed for clear error . . . ."  *Tricon Energy Ltd. v. Vinmar Int'l Ltd.*, 718 F.3d 448, 453 (5th Cir. 2013) (citing *Hughes Training Inc. v. Cook*, 254 F.3d 588, 592 (5th Cir. 2001)).  In light of these standards, the briefs, oral argument and pertinent portions of the record, we review the parties' most significant issues.

## DISCUSSION

### a. The Equipment Lease

A maritime charter agreement is interpreted using the general rules of commercial contract interpretation and construction.[2]  *See E.A.S.T., Inc. of Stamford, Conn. v. M/V Alaia*, 673 F. Supp. 796, 799-800 (E.D. La. 1987) ("A charter comes into existence when the parties have a meeting of the minds on the essential terms of the charter."), *aff'd* 876 F.2d 1168 (5th Cir. 1989); 22 *Williston on Contracts* § 58;5 (4th ed. 2015) ("A charter is formed as soon as the traditional elements of a contract are present . . . ."); *see also* G. Gilmore & C. Black, *The Law of Admiralty* § 4–1 at 196 (2d ed. 1975) ("Since most points of charter law involve construction of the charter, the principles are much the same as those of ordinary contract law").

---

[2] State contract law may be used as long as it does not conflict with admiralty principles.  *Ham Marine, Inc. v. Dresser Indus., Inc.*, 72 F.3d 454, 459 (5th Cir.1995).

No. 15-30038

Where a contract expressly refers to and incorporates another instrument in specific terms, both instruments are to be construed together. This is known as the incorporation by reference doctrine. *See* 11 *Williston on Contracts* § 30:25 (4th ed. 1999). The doctrine may apply even if the second document is unsigned. *One Beacon Ins. Co. v. Crowley Marine Servs., Inc.*, 648 F.3d 258, 268 (5th Cir. 2011). But the reference to the second document must be clear and the document must be ascertainable beyond doubt. *Id.* The "[t]erms incorporated by reference will be valid so long as it is 'clear that the parties to the agreement had knowledge of and assented to the incorporated terms.'" *Id.* (quoting 11 *Williston on Contracts* § 30:25 (4th ed. 1999)).

The district court relied on the incorporation by reference doctrine, concluding that the Equipment Lease was binding because (1) the Charter and the Equipment Lease referenced each other, and (2) Boh received a copy of the Equipment Lease. The district court added that Boh's actions in inspecting the crane (as required by ¶ 2 of the Equipment Lease) further evidenced Boh's assent to the terms of the Equipment Lease. This conclusion bore ramifications for several of the contract claims asserted by the parties.

On appeal, Boh contends that the Equipment Lease is unenforceable because there was no "meeting of the minds" as to the essential terms of the Equipment Lease. To support its contention, Boh cites uncontroverted trial testimony revealing the following:

- The Charter was negotiated between Cashman's vice president Brian Jones ("Jones") and Boh employee Ron Brylski.

- The Equipment Lease was negotiated on a separate and parallel track by Jones and Boh employee Mr. Biggers.

- The negotiation of the Equipment Lease involved the exchange of multiple drafts of the instrument. The proposed changes in the drafts included the assignment of responsibility for repairs between the parties.

4

- The Charter was ultimately signed.  The Equipment Lease was never signed and the negotiation of that instrument ceased when the Charter was signed.

- Boh believed that the Charter alone governed the parties' relationship.

Based on this evidence, Boh argues that no meeting of the minds as to the essential terms of the Equipment Lease was ever reached.

Boh adds that the incorporation by reference doctrine is inapplicable because the Equipment Lease cannot be clearly referenced or ascertained beyond doubt, given that multiple versions of the Equipment Lease were exchanged and no final agreement was reached.  Therefore, there was no mutual assent to the terms of the Equipment Lease.

Finally, Boh denies that its inspection of the crane, consistent with only one of twenty Equipment Lease provisions, implies assent to the Equipment Lease terms.  Boh argues that, as the charterer, it clearly had a right to inspect the barge, its appurtenances, and equipment, before sailing to the bridge project site.

In rebuttal, Cashman asserts that the Equipment Lease was fully incorporated by reference, and that Boh's signing of the Charter alone shows a meeting of the minds.

We agree with Boh.  The district court's reliance on the incorporation by reference doctrine was misplaced.  First, because the undisputed evidence shows that no final agreement was reached on the Equipment Lease, Boh did not  assent to any terms other than those stated in the Charter.  Thus, there was no meeting of the minds.  Second, no final version of the Equipment Lease can be clearly referenced and ascertained beyond doubt because multiple versions of the instrument were exchanged and a final version never existed.

No. 15-30038

*See One Beacon Ins. Co.*, 648 F.3d at 268. Moreover, because Boh could participate, under the Charter terms, in the inspection of the barge, its appurtenances, and equipment, Boh's inspection of the crane is insufficient to demonstrate assent to a second document that contains numerous additional provisions and assigns significant liability to Boh.

For these reasons, we conclude that the Charter alone (which covers the barge, its appurtenances, and equipment) governs the parties' agreement. Accordingly, we must reverse the district court's conclusion that Boh was bound by the terms of the Equipment Lease and remand for reassessment of the claims consistent with our holding. Our conclusion rejects Cashman's cross-appeal predicated on the Equipment Lease.

### b. *Charter Payments*

Although Boh docked the barge in Cashman's yard in June 2008, the district court awarded Cashman charter payments through January 8, 2009, in the amount of $175,760. The district court held that, under the clear terms of the Charter, Boh was liable for charter payments through January 2009 because the Survey process[3] initiated in December 2008 did not conclude until January.

The district court did not clearly err in awarding Cashman approximately six months of charter payments. Whether the Charter ended in July 2008 or January 2009 was hotly disputed by the parties. Cashman argued that the Charter ended in January. The district court weighed the evidence and agreed with Cashman. We find that there is evidence supporting the district court's credibility call, including testimony from Brylski admitting that

---

[3] The Off-Hire Survey process ends when the damage disclosed by the Survey, if any, is repaired.

the Charter did not definitely end in July 2008. Accordingly, we affirm the $175,760 in charter payments awarded to Cashman.

### c. "Down Time"

Boh claims $564,729.27 in damages for the work time lost when the crane needed wear and tear repairs. The district court held that a plain reading of ¶ 23 of the Charter precludes Boh from recovering for lost time.[4] Paragraph 23 states that Cashman is not liable for "loss of time or damage or expense on account of accidents, strikes, or delays . . . [and that Cashman] will make no allowance for loss of time due to weather or surface conditions, suspension of work, or any other reason."

Boh asserts that the first section of ¶ 23 limits Cashman's liability for loss of time solely to accidents, strikes, or delays, and that the second section merely conveys that charter payments are not suspended for any specific period of time because of the aforementioned reasons. Therefore, the Charter in no way limits Boh's ability to recover damages for "down time" resulting from wear and tear repairs.

We reject Boh's creative and self-serving interpretation of ¶ 23 of the Charter. A plain reading of the provision clearly precludes recovery for "down time" because it states that Cashman is not liable for loss of time due to "delays" and that it will not allow loss of time deductions for "any other reason." The district court did not err in denying Boh's "down time" claim.

### d. Deductions and Credits

Boh contends that it is entitled to an additional charter payment deduction in the sum of $20,670 and to an additional credit of $21,947.55 for repairs made to the crane's boom tower. Boh also contends that the district court erred in denying orally-approved deductions based on the Charter's

---

[4] The district court came to the same conclusion under ¶ 7(a) of the Equipment Lease.

merger clause, yet it allowed increased charter payments the parties never agreed to in writing.[5]

With one exception, the district court did not clearly err in allowing or disallowing certain deductions or credits based on latent defects or wear and tear damage repairs. The Charter allowed for the aforementioned deductions or credits. Therefore, the district court correctly found that Boh was entitled to $21,947.55 in repairs resulting from wear and tear to the crane's boom tower.[6] Whether the judgment correctly reflects this finding is unclear.

Boh, however, also argues that it is entitled to a charter payment deduction in the amount of $20,670 for part of the time that it took Cashman to fix the barge's latent defects. The district court held that Boh failed to prove by a preponderance of the evidence that it spent $20,670 in repairing latent defects. The district court appears to have misconstrued Boh's claim as a claim for repair costs. Boh's claim, however, concerns a charter payment deduction for part of the time that the barge was in Cashman's possession for latent defects repairs—April 17 to 30, 2007 (thirteen days).

Boh returned the barge for repairs on April 17, 2007. The repairs were completed on May 28, 2007. The citations to the record reflect (1) that Cashman conducted the repairs, (2) that latent defects caused the need for repairs, and (3) that Cashman credited Boh for part of the time that it took to complete the repairs, but not for the disputed thirteen days. The cited evidence is uncontroverted. Because the thirteen days fall within the time that the

---

[5] Boh's complaint that Cashman improperly raised the charter rate because no written agreement was signed by the parties seems to be valid. But any claim based on this rate increase is waived because Boh did not present it to the district court.

[6] To the extent that Boh has not been credited this amount, Boh is entitled to recover it.

No. 15-30038

barge was being repaired for latent defects, Boh is entitled to a charter payment deduction for those days.

Recapitulating briefly, Boh is entitled to deductions or credits for these items totaling $21,947.55 and $20,670.00.

### *e.  Contractual Interest and Attorneys' Fees*

On remand, the court may be required to redetermine contractual interest under ¶ 4 of the Charter.[7]  Because neither party plainly "prevailed," we find no clear error in the courts' denial of attorneys' fees under ¶ 17 of the Charter.

### CONCLUSION

For the foregoing reasons, we **AFFIRM** in part, and **REVERSE** and **REMAND** in part for the court to (a) reassess the claims based on the Charter alone; (b) award Boh particular deductions or credits as specified above; (c) redetermine interest if necessary; and (d) conduct proceedings not inconsistent herewith.

---

[7] "Interest shall accrue on all unpaid charter hire at the rate of (1 1/2%) one and one half percent per month (10) days after the due date."