**OLD REPUBLIC INSURANCE CO., Plaintiff,**

v.

**CONCAST, INC., Sumitomo Heavy Industries, Ltd., and Federal Insurance Company, Defendants.**

**CONCAST, INC., and Sumitomo Heavy Industries, Ltd., Third-Party Plaintiffs,**

v.

**FRED S. JAMES & CO. OF NEW YORK, Third-Party Defendants.**

**No. 83 Civ. 986 (RLC).**

United States District Court, S.D. New York.

March 22, 1984.

Sheft and Wright, New York City, for plaintiff; Norman J. Golub, John R. Wright, New York City, of counsel.

Donovan Leisure Newton & Irvine, New York City, for defendant Concast, Inc.; Paul A. Crotty, John Casaly, New York City, of counsel.

Acito & Klein, P.C., New York City, for defendant Federal Ins. Co.; Elinore B. Klein, New York City, of counsel.

Reid & Priest, New York City, for defendant Sumitomo Heavy Industries, Ltd.; Charles Schirmeister, John Noonan, New York City, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

Old Republic Insurance Co. ("Old Republic"), has sued Concast, Inc. ("Concast"), Sumitomo Heavy Industries ("SHI"), and Federal Insurance Co. ("Federal"), for a declaratory judgment that its Umbrella Policy with Concast does not afford coverage to SHI. Old Republic provides excess liability insurance to Concast. Federal is Concast's primary insurer. The issue of SHI's coverage under Concast's insurance policy with Old Republic arises out of a subcontract between Concast and SHI. The question here is whether, under the terms of Old Republic's policy with Concast, Old Republic is obligated to provide coverage to SHI because of a provision in the subcontract which obligates Concast to provide products liability coverage to SHI.

The question is presented by two motions for summary judgment pursuant to F.R. Civ.P. 56, one filed by Concast against Old Republic, in which SHI joins,[1] the other, a cross-motion by Old Republic against Concast, SHI and Federal. Concast argues that if the language of Old Republic's insurance policy is construed literally, it is apparent that, under either one of two provisions, SHI is covered by that policy. Old Republic, relying on the same tack, maintains that the policy prohibits the addition of SHI as an assured. Under one provision, it claims, the addition is precluded entirely; under the other, the addition cannot be effected unless Old Republic receives notice of the addition, which it maintains Concast neglected to provide.

Because Old Republic's reading of the policy's relevant provisions is not one the Court shares, summary judgment is granted to Concast and SHI. In addition, summary judgment is awarded to Federal due to the absence of any actual controversy between it and Old Republic.

### Background

Concast is in the business of engineering and selling steel-making equipment, including continuous casting complexes made by other manufacturers. On March 2, 1979, it entered into a subcontract with SHI for the design, manufacture and shipment of cer-

---

1. For purposes of convenience, the motions for summary judgment made by Concast and SHI and the arguments made in support thereof are referenced by using Concast's name alone.

tain elements of a continuous casting complex; Concast had contracted to deliver and install such a casting complex at National Steel Corporation's Granite City Steel Division ("Granite City"), in Illinois. SHI carried no products liability insurance and § 7.5 of the subcontract between SHI and Concast provided that SHI was to be included as "an additional named insured under Concast's own insurance policy." [2]

In 1979 Concast had a $500,000 primary comprehensive liability insurance policy with Federal, which it renewed through its insurance broker, third-party defendant Fred S. James & Co. of New York, Inc. ("James").[3] On Concast's behalf, James also arranged through Baccala & Shoop Insurance Services ("Baccala"), a general agent for several insurance companies, for a $10,000,000 excess liability insurance policy with Puritan Insurance Company ("Puritan"), to begin April 30, 1979. Both policies were renewed with the same carriers for the year commencing April 30, 1980. On April 30, 1981, the Federal policy was again renewed, but James transferred the excess coverage from Puritan to Old Republic, which was also represented by Baccala. The coverage provided by Old Republic was identical to that which Puritan had offered.

In compliance with the terms of the subcontract between SHI and Concast, Concast claims that it instructed James to secure coverage for SHI under all of the former's primary and excess liability policies for claims that could arise in connection with the continuous casting complex. In December, 1980, at Concast's request, James obtained a certificate of insurance from Federal, which Concast forwarded to SHI confirming that SHI had been added as an additional named insured on the pri-

mary policy. No such certificate was obtained from Old Republic.

On July 7, 1981, three employees of Granite City were injured and they brought personal injury actions against Concast, SHI, and others. Their injuries, they claimed, resulted from defects in the continuous casting complex. Federal defended and indemnified SHI with regard to these actions. Old Republic refused to do so, denying that SHI was an insured under the terms and conditions of its excess policy with Concast. Shortly thereafter, Old Republic brought its declaratory judgment action.[4]

*Determination*

■ The terms of the policy set out below over which the parties center their disagreement concern the definition of "assured".

1. ASSURED—

The unqualified word "Assured" wherever used in this policy includes:

(c) any person, organization, trustee or estate to whom the Named Assured is obligated by virtue of a written contract or agreement to provide insurance such as is afforded by this policy, but only to the extent of such obligation and in respect of operations by or on behalf of the Named Assured or of facilities of the Named Assured or of facilities used by the Named Assured;

(d) any additional assured (not being the Named Assured under this policy) included in the Underlying Insurances, subject to the provisions in Condition B; but not for broader coverage than is available to such additional Assured under any underlying insurances as set out in attached schedule;

B. ADDITIONAL ASSUREDS—

waiver of subrogation by the insurer against SHI.

---

**2.** Section § 7.5 of the subcontract read:

CONCAST shall, at its expense, provide and maintain for a period of two (2) years following the time of start-up of the MACHINE, product liability insurance covering the MACHINE against liability for personal or bodily injury, death and property damage, by including SHI as an additional named insured under CONCAST's own insurance policy, with a

**3.** *See Old Republic Ins. Co. v. Concast, Inc.*, 99 F.R.D. 566 (S.D.N.Y.1983) (Carter, J.).

**4.** The injury actions brought were settled subsequent to the institution of the declaratory judgment action. SHI was required to pay approximately $1,700,000.

In the event of additional assureds being added to the coverage under the Underlying Insurances during the currency hereof prompt notice shall be given to the Company hereon who shall be entitled to charge an additional premium hereon.

The Court finds that SHI is an assured under the first provision above ("definition (c)"). No opinion is expressed on whether or not notice was provided in connection with the second provision ("definition (d)"), which is an issue disputed only with respect to SHI's coverage thereunder.

■ With respect to definition (c), it is Concast's contention that SHI is automatically covered by the Old Republic policy to the same extent as Concast itself because the policy covers parties with which Concast has a contractual obligation to provide liability insurance and § 7.5 of the subcontract evidences Concast's obligation to SHI in this regard.[5] Old Republic resists this reading of definition (c) by arguing, for one, that § 7.5 is not an obligation on Concast's part "to provide insurance such as is afforded by this policy." That phrase, according to Old Republic, communicates the requirement that definition (c) will be activated only if the contractual agreement between Concast and SHI provides that SHI is to be included in Concast's *excess* liability insurance policy.

This puts at issue the meaning of definition (c)'s "insurance ... afforded by this policy." More specifically, the question is whether the above phrase was intended to encompass only the fact that excess liability insurance was being provided by Old Republic's policy with Concast, or whether it referred to a policy which provided coverage broad enough to make definition (c) operative in respect of a contractual agreement to provide products liability insurance in general. In this context, the Court is required to give the provision in question its plainest and most ordinary meaning. *H.S. Equities, Inc. v. Hartford Accident & Indemnity Co.*, 609 F.2d 669, 673–74 (2d Cir.1979); *St. Vincent's Hosp. & Medical Center v. Insurance Co. of North America*, 117 Misc.2d 665, 457 N.Y.S.2d 670 (N.Y. Sup.Ct.1982).

In common parlance, Concast's policy with Old Republic is adequately described as a liability insurance policy, more specifically, a products liability policy. The title of the policy itself, Umbrella Liability Insurance, reflects this. With no indication that the phrase in definition (c) was to convey any more exacting description of the Old Republic policy, definition (c) is to be given its full effect by virtue of the subcontract between Concast and SHI, which clearly provides that Concast will include SHI in its products liability policy. In reaching this conclusion, the Court also notes that in general, if doubt exists as to the person or persons covered by an insurance agreement, "the language of the policy must be construed in the inclusive sense for the benefit of the insured." *American Casualty Co. of Reading Pa. v. Simpson*, 413 F.2d 1042, 1043 (9th Cir.1969). To formulate narrowly the phrase at issue, as Old Republic advocates, would undoubtedly achieve the opposite result.

■ Old Republic's corollary argument is also not convincing. Old Republic contends, despite the language in § 7.5 of the subcontract specifying that "Concast shall ... provide and maintain product liability insurance," that Concast intended to include SHI in its primary liability policy alone. Evidence of this intention, Old Republic claims, is the use of the singular, rather than the plural in Concast's promise to include "SHI as an additional named insured under Concast's own insurance *policy*." (emphasis supplied). Such evidence, as it were, is, however, completely undermined by the testimony of representatives from Concast, SHI, and James, whose depositions were requested and taken by Old Republic. Uniformly they maintained that SHI and Concast intended to provide product liability coverage to SHI to the limits of

---

**5.** See note 2, *supra*.

Concast's own coverage.[6] Indeed, use of the "insurance policy" rather than "insurance policies" does not contradict that intention. The discussions between SHI and Concast proceeded in terms of product liability insurance rather than in terms of individual policies.[7] There was no apparent need to distinguish among the policies and Concast's liability insurance could be referred to coherently as Concast's liability policy. Moreover, § 7.5 was drafted by businessmen. Whether or not they can be characterized as sophisticated in their business dealings,[8] it is unlikely that they invested the language of § 7.5 with nuances that either a lawyer or insurance expert would.

■ In addition, as Concast points out, to adopt Old Republic's interpretation of § 7.5 would be to abandon common sense. There is no explanation as to why SHI would contract for only limited liability coverage, nor, on the other hand, why Concast would assume a multi-million dollar liability on SHI's behalf. Furthermore, James has been impleaded as a third-party defendant and has nothing to gain by admitting that it was told to secure primary and excess coverage at the time § 7.5 was written.[9]

Taking a different approach, Old Republic also claims that regardless of the sub-contract's provisions, Concast could not accomplish an extension of products liability coverage by contract under definition (c) because of some alleged conflict between the definition and the definition of products liability coverage. Insofar as the argument can be deciphered, Old Republic's claim seems to be that definition (c) provides coverage "only ... in respect of operations by or on behalf of the Named Assured or of facilities of the Named Assured ...," while the definition of Products Liability, ¶ 10 of the policy, affords coverage if bodily injury or property damage arise out of the Named Assured's products or operations after such operations have been completed. Hence, because the former definition refers to operations, in supposed contrast to the latter, which refers to completed operations, Concast is precluded from making use of definition (c).[10]

The conflict is chimerical. Definition (c) does not, as Old Republic seems to suggest, confine coverage under its terms to ongoing operations. The precise wording of the policy, "in respect of operations," is broad in tone. Moreover, there is every indication that had Old Republic intended a special limitation, it would have written a limiting clause. The definition of products liability is replete with such clauses.[11]

---

**6.** Transcript of Deposition of J.L. Cuomo, Concast's Vice President, pp. 32–34; Transcript of Deposition of S. Tomita, SHI representative in negotiations, pp. 67–68, 98–99; Transcript of Deposition of J.F. Burns, James account executive, pp. 14–15.

**7.** Transcript of Deposition of Y. Fuji, representative for SHI during negotiations, pp. 19–22.

**8.** Old Republic argues that the Court should take account of the fact that the language of § 7.5 resulted from extensive discussions among sophisticated businessmen negotiating at arms length. (Brief, 14). This argument, of course, cuts the other way as well. Had those involved intended to limit coverage to the primary policy, they could and would have said so.

**9.** James' admitted failure to obtain a certificate of insurance for SHI under the excess insurance policy bears little relationship to what negotiators for SHI and Concast intended in drafting § 7.5. If James' representative erred in failing to secure a certificate of excess insurance for Concast and SHI, it does not follow that such error should be attributed to the negotiators in interpreting their intent. First, the certificate was not a prerequisite to SHI's coverage under the policy, a fact of which James may or may not have been aware. Second, both Concast and SHI were not familiar with insurance practices and relied on James' expertise as assurance that § 7.5 would be carried out. The fact that neither Concast nor SHI objected to or questioned James' production of the single Federal insurance certificate cannot, therefore, be used to infer their intent to obtain the primary coverage alone.

**10.** Old Republic makes a similar argument concerning the use of "facilities" in definition (c). Since Old Republic's contentions regarding use of "operations" is found to be meretricious, there is no need to address this additional claim.

**11.** See, e.g., ¶ 10(1) " 'Named Assured's Products' means goods or products manufactured, sold, handled or distributed by the Named Assured

The need to be clear in this case were limitations intended is, in any event, unmistakable. Provisions almost identical to definition (c) have been held to extend liability insurance, *Gulf Oil Corp. v. Mobile Drilling Barge or Vessel*, 441 F.Supp. 1 (E.D. La.1975), *aff'd* 565 F.2d 958 (5th Cir.1978), and the burden is upon the insurer to prove that coverage does not exist under the policy by affording notice in terms which are comprehensible to the average person. *See Henning v. Metropolitan Life Ins. Co.*, 546 F.Supp. 442, 448–49 (M.D.Pa.1982) (construing rule under New York law). Such notice has not been given here and the Court cannot find in definition (c) the meaning with which Old Republic endows it. Finding the foregoing arguments without merit, summary judgment is granted for Concast; SHI is covered by Old Republic's policy with Concast under definition (c).

 In addition, reasonable costs and attorneys' fees are awarded to Concast and SHI. Although, as a general rule, New York does not allow a litigant to recover damages for his or her expenses in the prosecution or defense of an action, recovery has been allowed where insureds must defend their rights to benefits in a declaratory judgment action brought by an insurer. *American Mutual Fire Ins. Co. v. Beards*, 453 N.Y.S.2d 569, 115 Misc.2d 152 (N.Y.Sup.Ct.1982) and cases cited therein. The exception to the general rule is based upon the right to recover for breach of the contractual relationship between insured and insurer as a result of the insurer's refusal to defend and indemnify its insured. *Id.* 453 N.Y.S.2d at 570. Old Republic refused to defend and indemnify SHI in the claims made against the latter, and based upon the above rationale, Concast and SHI are entitled to collect the amount they expended in defense of this action.

As a final matter, the question of Federal's entitlement to an award of summary judgment is easily addressed. Federal issued a primary liability insurance policy to Concast and on the instructions of Concast, through James, Federal added SHI as an additional insured to the above insurance policy, effective December 1, 1980 through February 1, 1983. After the Granite City Accident, Federal fully defended and indemnified Concast and SHI in connection with the underlying personal injury suits. Since Federal has apparently fulfilled its obligation and duties under its insurance policy, its involvement in the dispute between Old Republic and Concast/SHI remains a mystery; there being no discernable controversy between Federal and Old Republic that can be adjudicated here, summary judgment is granted in Federal's favor.

IT IS SO ORDERED.

---

... *but* ... *shall not* include a vending machine or any other property other than such container rented to or located for use by others but not sold."; ¶ 10(2) " 'Completed Operations Hazard' includes bodily injury and property damage arising out of operations or reliance upon a representation or warranty made any time with respect thereto ... *[but] does not* include bodily injury or property damage arising out of...." (emphasis supplied).