# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

————

No. 18-30392

————

United States Court of Appeals
Fifth Circuit

**FILED**

February 12, 2019

Lyle W. Cayce
Clerk

INTERNATIONAL MARINE, L.L.C.; ET AL.,

Plaintiffs,

TESLA OFFSHORE, L.L.C.,

Intervenor Plaintiff–Appellant,

versus

ATLANTIC SPECIALTY INSURANCE COMPANY;
NEW YORK MARINE & GENERAL INSURANCE COMPANY,

Defendants–Appellees.

\* \* \* \* \*

TESLA OFFSHORE, L.L.C.,

Plaintiff–Appellant,

versus

ATLANTIC SPECIALTY INSURANCE COMPANY;
ONE BEACON INSURANCE COMPANY;
NEW YORK MARINE AND GENERAL INSURANCE COMPANY,

Defendants–Appellees.

No. 18-30392

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:15-CV-1446
USDC No. 2:17-CV-8158

_____

Before SMITH, BARKSDALE, and HO, Circuit Judges.

JERRY E. SMITH, Circuit Judge:*

This is an insurance coverage dispute stemming from an allision during a sonar survey by Tesla Offshore, L.L.C. ("Tesla"). Tesla seeks insurance coverage for its liability from the allision under two policies taken out on a vessel it chartered. The district court granted the insurers' motions for summary judgment and dismissed Tesla's claims with prejudice. We affirm.

I.

This court considered claims related to the 2012 allision and provided a detailed recitation of the facts and litigation history in *International Marine, L.L.C. v. Integrity Fisheries, Inc.*, 860 F.3d 754 (5th Cir. 2017). We adopt part I of that opinion in full and only summarize the relevant facts here.

In 2012, Tesla was conducting an archaeological sonar survey using two chartered vessels. The first—the "tow vessel"—was the M/V INTERNATIONAL THUNDER ("THUNDER") owned by International Marine, L.L.C., and International Offshore Services, L.L.C. (jointly, "International"). The second—the "chase vessel"—was the F/V LADY JOANNA ("JOANNA") owned

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

2

No. 18-30392

by Sea Eagle, Inc. ("Sea Eagle"). [1]

To perform the survey, the THUNDER traveled along a grid pulling a "towfish" attached to a lengthy cable. The JOANNA followed to track the towfish and receive sonar signals it emitted.[2] At one point, the THUNDER reeled in the towfish to make some repairs. After the towfish was redeployed, its cable allided with the mooring line of a mobile offshore drilling unit ("MODU") used by Shell Offshore, Inc. ("Shell"). The allision severely damaged the MODU, and Shell sued Tesla and International for negligence. A jury awarded Shell over $9 million in damages and determined that Tesla was 75% at fault, International 25%.

Following that verdict, Tesla and International sought indemnity from Sea Eagle, owner of the JOANNA. Tesla and International also sued two of Sea Eagle's insurers, claiming that they had been "added as additional insureds" on two policies taken out on the JOANNA. The first policy, a marine comprehensive liability ("MCL") policy, was issued by Atlantic Specialty Insurance Company/OneBeacon Insurance Company ("OneBeacon").[3] The second, a bumbershoot policy, was issued by New York Marine and General Insurance Company ("NYMAGIC").[4]

The district court held that Tesla and International were not entitled to

---

[1] *See Int'l Marine*, 860 F.3d at 757. Tesla originally chartered the INTEGRITY owned by Integrity Fisheries, Inc. ("Integrity"). But that vessel broke down, so Integrity substituted the JOANNA, owned by its sister company Sea Eagle.

[2] Tesla personnel were responsible for receiving the sonar signals. The JOANNA's crew—employed by Sea Eagle—was responsible for operating the vessel itself.

[3] The MCL policy number is B5JH9061912. Only Integrity is listed on that policy as a named insured, but OneBeacon agreed in June 2015 to treat Sea Eagle as a named insured once the JOANNA was substituted for the INTEGRITY.

[4] The bumbershoot policy number is ML101997/12. That policy was originally issued to Integrity, but the schedule of vessels was amended to include the JOANNA.

indemnity because the allision did not "aris[e] out of or relate[] in any way" to the operation of the JOANNA, as the indemnity portions of the Master Service Agreement ("MSA") between Tesla and Sea Eagle required.[5]  The court also denied Tesla's insurance claims against Sea Eagle's insurers, holding that those claims fell with the indemnity claim.

This court affirmed the denial of indemnity but vacated the denial of the insurance claims.  Noting that the scope of insurance coverage should be based on the language of the policies and not the availability of indemnity, the court vacated and remanded for further proceedings on the insurance claims.  *Int'l Marine*, 860 F.3d at 762.  But importantly, the panel affirmed the district court's finding that "the JOANNA's operation made no contribution to the negligent act causing the [Shell MODU's] damages."  *Id.* at 761.  The court repeatedly emphasized that Tesla's "negligence, as well as the resulting damage to [Shell's MODU], was *independent of* the operation of the JOANNA."  *Id.* at 760 (emphasis added).

On remand, after presenting the relevant policy language, the insurers moved for summary judgment on whether Tesla and International were insureds on the MCL and bumbershoot policies and, if so, whether they were entitled to coverage for their negligence liability.  Tesla filed cross-motions for summary judgment.  The district court granted the insurers' motions, denied Tesla's, and dismissed Tesla's and International's claims with prejudice.  Tesla—but not International—appeals.

---

[5] Because Tesla originally chartered the INTEGRITY, Tesla executed an MSA with Integrity Fisheries.  Tesla executed an identical MSA with Sea Eagle when the JOANNA was substituted for the INTEGRITY. Thus, there are two identical MSAs.  Because the MSAs are identical, and the parties agree that Sea Eagle is an insured under both the MCL and bumbershoot policies, we refer to a singular MSA for simplicity.

No. 18-30392

## II.

We review a summary judgment *de novo* and affirm if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Int'l Marine, L.L.C. v. Delta Towing, L.L.C.*, 704 F.3d 350, 354 (5th Cir. 2013) (cleaned up). "The interpretation of maritime contract terms is a matter of law we review de novo." *Id.* "On cross-motions for summary judgment," as here, the court "review[s] each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Amerisure Ins. v. Navigators Ins.*, 611 F.3d 299, 304 (5th Cir. 2010) (cleaned up).

"[T]he interpretation of a contract of marine insurance is—in the absence of a specific and controlling federal rule—to be determined by reference to appropriate state law." *Ingersoll-Rand Fin. Corp. v. Emp'rs Ins. of Wausau*, 771 F.2d 910, 912 (5th Cir. 1985). Louisiana law applies here and instructs that "[a]n insurance policy is a contract." *Bernard v. Ellis*, 111 So. 3d 995, 1002 (La. 2012). "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." LA. CIV. CODE art. 2046. Under Louisiana law, the party seeking coverage has the burden of proving that "the incident falls within the policy's terms." *Doerr v. Mobil Oil Corp.*, 774 So. 2d 119, 124 (La. 2000). The insurer has the burden of proving an exclusory clause applies. *Id.* Ambiguities in a policy are construed in favor of coverage. *Id.*

### A.

We first consider whether Tesla is an "additional insured" under the OneBeacon MCL policy for work performed under an "insured contract." Because Tesla is not a named insured or named additional insured on the MCL policy, it is covered only if it satisfies the conditions in the policy's blanket

5

## No. 18-30392

additional insured endorsement. That endorsement affords coverage to an entity not specifically named in the policy if (1) Sea Eagle, the named insured, was obligated by an "insured contract to include" that organization as an additional insured and (2) the liability for which the organization seeks coverage arises out of Sea Eagle's "work," which includes "[w]ork or operations performed *by [Sea Eagle] or on [Sea Eagle's] behalf*; and . . . [m]aterials, parts or equipment furnished in connection with such work or operations."[6]

### 1.

Sea Eagle was not obligated by an "insured contract to include" Tesla as an additional insured. The parties agree that the relevant "insured contract" is the MSA. Section 11(a) of the MSA obligated Sea Eagle to acquire insurance to "protect [Tesla] from third party claims arising out of or connected with the performance of *Service* hereunder." (Emphasis added.) The MSA defines "Services" as "the performance of work and/or . . . the provision of services, which may include the furnishing of labor, equipment, vehicles, vessels, aircraft, tools, instruments, materials, supplies, or other products."

Under that definition, the only "Service" Sea Eagle performed was providing Tesla with the JOANNA and its crew. Sea Eagle was thus obligated to

---

[6] The MCL policy "Additional Insured and Waiver of Subrogation" Endorsement provides that "Section IV. of the policy (Who is an Insured) is amended to include any person or organization that you are obligated by an 'insured contract' to include as Additional Insureds, but only with respect to liability arising out of 'your work.'" The policy defines "your work" as

  a. Work or operations performed by you or on your behalf; and

  b. Materials, parts or equipment furnished in connection with such work or operations.

"Your work" also includes

  a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

  b. The providing of or failure to provide warnings or instructions.

obtain insurance to cover Tesla's liability only for third-party property damage that arose from or was connected with the provision of the JOANNA and its crew. But the third-party claim for which Tesla seeks coverage did not "aris[e] out of" nor was "connected with" that Service. Consequently, Sea Eagle was not obligated by a "written contract" to obtain insurance coverage to cover Tesla's liability for third-party property damage based on the allision.

Even if the third-party claim for which Tesla seeks coverage stemmed from Sea Eagle's "Service," Sea Eagle's insurance obligation is further limited by Section 11(b) of the MSA. That subsection explains that Sea Eagle was required to name Tesla as an additional insured with respect to the provision of the JOANNA and its crew (Sea Eagle's "Services") only "to the extent of the *risks and liabilities* assumed by [Sea Eagle] in this Agreement." (Emphasis added.)

Like the district court, OneBeacon maintains that Section 11(b)'s reference to "risks and liabilities assumed by [Sea Eagle] in this Agreement" refers to Section 9(d) of the MSA, the "Liability and Indemnity" section. Based on that section, OneBeacon contends that Sea Eagle was required to obtain insurance only for third-party property damage "arising out of or related in any way to the operation" of the JOANNA. OneBeacon concludes that because this court previously held that Tesla's liability did not "aris[e] out of or relate[] in any way to the operation" of the JOANNA for purposes of Section 9(d), Sea Eagle was not required to name Tesla as an additional insured with respect to Tesla's negligence liability.[7] OneBeacon also points out that this court uses an underlying insured contract to determine whether a party is an additional

---

[7] OneBeacon does not contend that Tesla's insurance claims fail because the indemnity claims fail but that the indemnity and insurance provisions are congruent.

insured where the "additional insured clause in a contract limits the requirement to name a party as an additional insured to the liabilities or indemnities assumed."[8]

Tesla rejoins that the liability and indemnity section of the MSA may not be used to define the "risks and liabilities" for which Sea Eagle was obligated to name Tesla as an additional insured. Tesla explains that "[t]he parties' intent as reflected by the words in the policy determine[s] the extent of coverage" under Louisiana law (quoting *Elliott v. Cont'l Cas. Co.*, 949 So. 2d 1247, 1254 (La. 2007)). But although it urges this court to use only the language of the insurance policies to determine the scope of coverage, Tesla elsewhere claims that Section 11(a) governs the risks and liabilities for which Sea Eagle needed to obtain insurance. Offering no binding precedent to support its approach, Tesla insists that "the insurance obligations under Section 11 . . . are broader [than] and separate" from the risks and liabilities assumed under Section 9(d). Tesla concludes that, based on Section 11(a), Sea Eagle "unilaterally assumed all 'risks and liabilities' of third-party property damage regardless of fault."

We agree with OneBeacon. *Becker* permits us to refer to Section 9(d) of the MSA to define the "risks and liabilities" that Sea Eagle assumed and for which it needed insurance coverage. And based on that approach, Sea Eagle was not obligated to obtain coverage for Tesla's liability for the allision. But

---

[8] *Becker v. Tidewater Inc.*, 586 F.3d 358, 370 (5th Cir. 2009) ("In order to determine if Baker is an 'additional assured,' we must read the insurance and indemnity provisions of the time-charter contract in conjunction in order to properly interpret the meaning of the contract."); *see also Certain Underwriters at Lloyd's London v. Oryx Energy Co.*, 142 F.3d 255, 258 (5th Cir. 1998) (referring to the indemnity portion of an underlying contract to determine whether one party was "required" to be covered as an additional insured).

No. 18-30392

even aside from Section 9(d), Tesla is not entitled to coverage because Section 11(a) required Sea Eagle to obtain insurance to protect Tesla only "from third party claims *arising out of or connected with* the performance of Service." Though Tesla avers that Section 11(a)'s "connected with the performance of Service" language is broader than Section 9(d)'s "arising from or related in any way to the operation of," this court has already determined that the third-party claims for which Tesla seeks coverage were "independent" of Sea Eagle's services. *See Int'l Marine*, 860 F.3d at 760−61.[9]

2.

Notwithstanding our conclusion that Sea Eagle was not obligated to name Tesla as an additional insured, the liability for which Tesla seeks coverage did not arise out of Sea Eagle's "work." Thus, it is not covered by the MCL policy.

This court has already determined that "the JOANNA's operation"—the only "work" performed by or on Sea Eagle's behalf—"made *no* contribution to the negligent act causing the [MODU]'s damages." *Id.* at 761 (emphasis added). Despite that holding, Tesla insists that its liability for the allision arose from Sea Eagle's work because the JOANNA was "essential to the operation underway" when the allision occurred.

Tesla maintains that the words "arising out of" do not require that Sea Eagle's work was the proximate cause of Tesla's liability but instead require that the liability was "'originating from,' 'having its origin in,' 'growing out of,' or 'flowing from,' or in short, 'incident to, or having connection with'" Sea Eagle's work (quoting *Red Ball Motor Freight, Inc. v. Emp'rs Mut. Liab. Ins.*,

---

[9] OneBeacon alternatively presents multiple defenses to coverage, but because we conclude that Tesla is not entitled to coverage, we do not consider them.

189 F.2d 374, 378 (5th Cir. 1951)).  Because it "would have been unable to perform the survey work . . . without the use of a chase vessel," Tesla reasons that the JOANNA's work was at least "performed in connection with the time charter operation."  OneBeacon counters that adopting Tesla's interpretation of "arising out of" would be unprecedented and would vastly expand the liability for which owners of chartered vessels might have to pay.

Whatever the merit of Tesla's theory, this court has already determined that the JOANNA's work was independent of the liability Tesla incurred.[10] And that holding forecloses the notion that the vessel's operation was "incident to, or having connection with," the allision.  *EMCASCO Ins. v. Am. Specialty Lines Ins.*, 438 F.3d 519, 524–25 (5th Cir. 2006).  Consequently, Tesla's negligence liability is not covered by the MCL policy because its liability did not "aris[e] out of [Sea Eagle's] work."[11]

B.

We next consider whether Tesla's negligence liability is covered by the NYMAGIC bumbershoot policy.  Though Tesla is not listed as a Named Assured or Additional Assured,[12] the policy's blanket "assured" provision

---

[10] That holding has a preclusive effect, as both insurers emphasize.

[11] Based on the terms of the MCL policy's "watercraft exclusion," Tesla alternatively contends that "[t]he MCL Policy provided coverage for all claims asserted against Tesla" because it "protects the insured against those liabilities it incurs in some capacity other than as owner or charterer of the insured vessel."  Suggesting that its liability to Shell stemmed, at least in part, from activity before the sonar survey began, Tesla avers that the MCL policy should provide some coverage.  But the source of Tesla's liability to Shell is irrelevant to the determination of whether Tesla is an additional insured on the MCL policy.

[12] Tesla asserts that the bumbershoot policy was a "following form" policy of an underlying protection and indemnity ("P&I") policy that named Tesla as an assured, so Tesla should be considered a named assured under the bumbershoot policy.  NYMAGIC repudiates that characterization, maintaining that the bumbershoot policy—complete with its own terms and conditions—stands alone.  NYMAGIC has the better argument: The bumbershoot policy never incorporates the P&I policy's "assureds."

covers any organization "to whom the Named Assured is obligated by virtue of a written contract or agreement to provide insurance such as is afforded by this policy, but *only* in respect of operations *by or on behalf of* the Named Assured." (Emphasis added.) [13]  There are thus two criteria for Tesla to qualify as an additional assured under the bumbershoot policy.  First, Integrity (Sea Eagle's sister company that obtained the bumbershoot policy)[14] must have been obligated by the MSA (the "written contract") to provide Tesla with the type of coverage the bumbershoot policy affords.  Second, if that obligation existed, Tesla is covered only "in respect of operations by or on behalf of the Named Assured [Integrity]."

Analysis of the first criterion parallels our discussion above.  To reiterate, the MSA obligated Sea Eagle to obtain insurance protecting Tesla from third-party claims stemming from the "Service" Integrity provided—the use and operation of the JOANNA.  The claim for which Tesla seeks coverage did not stem from that "Service."

Even if the MSA obligated Integrity to cover that claim, the second criterion for Tesla to qualify as an additional assured is not satisfied.  Tesla maintains—without citing any controlling precedent[15]—that whether the relevant operation was "by or on behalf of" Integrity depends on "whether there

---

[13] Tesla's repeated emphasis on being entitled to coverage under the bumbershoot policy because it is an "excess" policy of the P&I policy that tendered its limits puts the cart before the horse.  If Tesla does not qualify as an additional assured under the bumbershoot policy, it does not matter whether the P&I policy tendered its limits.  And, even so, NYMAGIC contends that since the P&I insurer settled with Tesla, its payments to Tesla did not count toward exhausting its limits such that the bumbershoot policy would cover the excess.

[14] Integrity is the named assured on the bumbershoot policy.  It added the JOANNA, owned by Integrity's sister company Sea Eagle, to the policy when Integrity's vessel broke down and Integrity substituted the JOANNA.

[15] Tesla cites only cases from the Texas Supreme Court, *Evanston Ins. v. ATOFINA Petrochemicals, Inc.*, 256 S.W.3d 660, 666 (Tex. 2008), the Southern District of New York, *Old Republic Ins. v. Concast, Inc.*, 588 F. Supp. 616, 618 (S.D.N.Y. 1984), and the Eastern

No. 18-30392

was a causal connection or relation between the entire operations [sic] in which the LADY JOANNA was essential and the underlying incident." The correct understanding of "by or on behalf of," Tesla finishes, is that "Tesla would have been unable to perform the survey work and towage ongoing at the time of the incident" without the use of the JOANNA as "the 'eyes' of the tow."

Although Tesla insists that this court must focus on whether there was a connection between the entire operation and the MODU's damage, that is not what the language of the bumbershoot policy requires. That language covers only incidents that arose "in respect of operations by or on behalf" of Integrity. The entire operation was not on behalf of Sea Eagle; to the contrary, Integrity (via its sister company) was working on behalf of Tesla.[16]

III.

Tesla is not entitled to coverage under the OneBeacon MCL policy or the NYMAGIC bumbershoot policy. The judgment is AFFIRMED.

---

District of Louisiana, *Gulf Oil Corp. v. Mobile Drilling Barge or Vessel Margaret*, 441 F. Supp. 1, 6 (E.D. La. 1975).

[16] NYMAGIC contends that if Tesla qualifies as an additional assured, coverage is not available per policy conditions and exclusions. Because we conclude that Tesla is not entitled to coverage under the bumbershoot policy, we do not consider those defenses.